**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THADIUS J. HOLLAND,<br><br>    Plaintiff,<br><br>    v.<br><br>GUADALUPE TORRES, *et al.*,<br><br>    Defendants. | Case No. 1:24-cv-0557 JLT BAM (PC)<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS, DISMISSING PLAINTIFF'S CLAIM AGAINST CLEMENT OGBUEHI, AND DIRECTING THE CLERK OF COURT TO UPDATE THE DOCKET<br><br>(Doc. 17) |

Thadius J. Holland seeks to hold the defendants liable for deliberate indifference to his serious medical need following complications from a circumcision while housed at the Substance Abuse Treatment Facility. (*See* Doc. 15.) The assigned magistrate judge screened Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A(a) and found Plaintiff stated cognizable claims against Guadalupe Torres and Candice Gish. (*Id.* at 5-7.) However, the magistrate judge determined Plaintiff did not allege facts sufficient to state a claim against Clement Ogbuehi. (*Id.* at 6.) Therefore, the magistrate judge recommended the action proceed only on the claims against Torres and Gish. (*Id.* at 7.)

In his first amended complaint, Plaintiff alleged that ten days after undergoing circumcision, his stitches "ripped off in the middle of the night," which caused "a lot" of bleeding. (Doc. 15 at 4) Because he already had an appointment to see a doctor in the morning, unidentified personnel disregarded his request to have medical treatment at that time. *Id*. The next

morning, the doctor saw where the stitches had pulled out but disagreed with Plaintiff that hospital treatment was needed because "the wound w[ould] heal at some point." *Id*. Despite Plaintiff's expressed concerns about infection, the doctor did not provide additional treatment. *Id*. at 4-5. That evening, Plaintiff changed the dressing and noted blood clots, "chunks of blood," and bleeding. *Id*. at 5. When the guards called the medical department, Nurse Gish refused to see him because "there was nothing she could do for him." *Id*. The next morning, Plaintiff was seen by medical and transferred to the on-site TTA unit. *Id.* Eventually, Plaintiff was transferred to the hospital and received six stitches. *Id*. Plaintiff asserts that he suffered pain and distress over the worry that he may lose his penis due to infection. *Id*.

In the medical records attached to Plaintiff's complaint, the notes indicate that after his circumcision on November 30, 2022, he was seen by medical staff many times. (Doc. 15 at 12) On December 1, 2022, the nurse ordered him to receive an antibiotic ointment and told him to return if there was evidence of an infection. *Id*. On December 2, 2022, his doctor, Dr. Ogbuehi[1], evaluated Plaintiff and noted that the wound was "healing well," with mild edema and no urethral stricture. *Id*. The doctor advised him to return for treatment if he had difficulty urinating. *Id*. On December 5, 2022, a nurse evaluated Plaintiff and observed "impaired skin integrity related to inflammatory process, and medium pain." *Id*.  The next day, the doctor evaluated Plaintiff's condition and noted, "swelling, erythema, and tenderness to surgical site, no signs of infection no apparent urethral stricture, phallus intact, post-operative pain" and ordered Plaintiff to receive "acetaminophen codeine for pain management." *Id*. On December 10, 2022, the doctor cleaned the surgical site with saline and applied triple antibiotic and hydrocortisone creams and dressed the wound. *Id*. The doctor encouraged Plaintiff to use Motrin and Tylenol for pain. *Id*.

The next day, on December 11, 2022, the doctor evaluated Plaintiff once again. (Doc. 15 at 12) The doctor noted "ripped stitches on the post-operative site" and a skin laceration, caused by an erection. *Id*. The doctor stitched the laceration, prescribed additional antibiotic cream to be used prophylactically, and advised Plaintiff to continue to use the already prescribe medications

---

[1] Plaintiff's objections clarify that his primary care physician was Dr. Ogbuehi. (Doc. 20)

1    for pain. *Id*. On December 13, 2022, the doctor evaluated the Plaintiff and saw "significant
2    improvement to swelling," there was no difficulty urinating and the "surgical site was healing
3    well." *Id*. The next day, the doctor noted that there was swelling, Plaintiff had expressed some
4    difficulty urinating, a blister filled had formed on the glans penis with no bleeding, Plaintiff
5    complained of a burning sensation while urinating. *Id*. Plaintiff was transferred to the hospital.
6    After he was returned to the prison, his doctor saw him on December 17, 2022. *Id*. Plaintiff had
7    no difficulty urinating and the doctor prescribed antibiotics. *Id*. After this, Plaintiff had routine
8    and ongoing medical treatment to monitor his healing. *Id*.

9    Plaintiff filed objections to the Findings and Recommendations, maintaining Dr. Ogbuehi
10   was deliberately indifferent to his serious medical need. (Doc. 20 at 1-2.) Plaintiff alleges that
11   when Ogbuehi saw him, Ogbuehi ripped Plaintiff's stitches from his circumcision while cleaning
12   the wound, wrapped it, and sent Plaintiff "back to his cell in pain and suffering." (*Id.*) Plaintiff
13   seems to assert that he underwent surgery to repair his condition caused by the "ripped" stitches
14   and that Dr. Ogbuehi disregarded his pain. *Id*. at 1-2. Plaintiff contends that Ogbuehi "knew that
15   plaintiff faced a substantial risk of serious bodily injury and disregarded that risk by failing to
16   take reasonable measures to abate it." (*Id.* at 2.) Plaintiff asserts Ogbuehi refused to send
17   Plaintiff for further treatment, and this delay constituted a constitutional violation. (*Id.*)

18   Notably, Plaintiff's objections are contrary to the allegations and the document attached to
19   his first amended complaint, as noted above. (Doc. 15) He does not address the near-daily
20   medical care he received, the treatment Dr. Ogbuehi provided and the fact that he was prescribed
21   pain medication throughout. Though Plaintiff certainly wanted more urgent treatment, the
22   Magistrate Judge concluded that his disagreement with the course of treatment provided by Dr.
23   Ogbuehi did not amount to deliberate indifference to his serious medical condition.

24   The Court agrees. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012). Furthermore,
25   even disregarding the allegations and information provided in his first amended complaint,
26   Plaintiff does not allege facts sufficient to support a conclusion that the treatment Dr. Ogbuehi
27   provided—including cleaning the wound and rewrapping it—was a medically unacceptable
28   response to his condition. The allegations identified in the amended complaint and Plaintiff's

objections are insufficient to state a cognizable claim against Ogbuehi for deliberate indifference. *See Snow*, 681 F.3d at 988 (citation omitted).  Thus, the Court **ORDERS**:

1. The Findings and recommendations issued on December 13, 2024 (Doc. 17), are **ADOPTED** in full.
2. This action **SHALL** proceed only on Plaintiff's claim for deliberate indifference to medical care in violation of the Eighth Amendment against Defendants Torres and Gish, as stated in the first amended complaint (Doc. 15).
3. All other claims and defendants are **DISMISSED** from this action for failure to state claims upon which relief may be granted.
4. The Clerk of Court is directed to update the docket and terminate Clement Ogbuehi as a defendant.
5. This action is referred to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **February 14, 2025**

UNITED STATES DISTRICT JUDGE