# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THADIUS J. HOLLAND, | Case No.  1:24-cv-00557-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO DISMISS BY DEFENDANT CANDACE GISH |
| v. | |
| TORRES, *et al.*, | (ECF No. 33) |
| Defendants. | **FOURTEEN-DAY DEADLINE** |

## I.    Introduction

Plaintiff Thadius J. Holland ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On December 13, 2024, the undersigned screened Plaintiff's first amended complaint, found that Plaintiff stated cognizable claims against Defendants Guadalupe Torres and Candice Gish for deliberate indifference to medical care in violation of the Eighth Amendment, and issued findings and recommendations that recommended the action proceed only on the claims against Defendants Torres and Gish.  (ECF No. 17.)  On February 14, 2025, the district judge adopted the findings and recommendations in full and ordered that this action proceed on Plaintiff's claim for deliberate indifference to medical care in violation of the Eighth Amendment against Defendants Torres and Gish, as stated in the first amended complaint.  (ECF No. 21.)

Currently before the Court is Defendant Gish's motion to dismiss the first amended

1

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed June 4, 2025.  (ECF No. 33.)  Following an extension of time, Plaintiff filed a response on August 29, 2025.  (ECF No. 42.)  Defendant replied on September 12, 2025.  (ECF No. 45.)  The motion is fully briefed.

**II.      Motion to Dismiss for Failure to State a Claim**

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006); *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000).

In general, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court has an obligation to construe such pleadings liberally.  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, a court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled.  *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).  Also, the Court need not credit naked assertions, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *See Twombly*, 550 U.S. at 555–57.

### B. Relevant Allegations in the Amended Complaint

In his first amended complaint, Plaintiff alleges that Defendant Torres, psych tech at the Substance Abuse Treatment Facility, refused to send Plaintiff to TTA for medical treatment, leaving Plaintiff "in a pool of blood until a next day appointment."  (ECF No. 15 at 3.)  Non-party

Clement Ogbuehi refused to send Plaintiff for medical treatment and wrapped Plaintiff's wounds after ripping the stiches trying to clean the wound.  After continuing bleeding after being seen by Ogbuehi, Plaintiff was still bleeding and asked Defendant Gish to call medical about the bleeding and loss of blood.  Defendant Gish was acting under color of law by delaying and denying Plaintiff's medical needs stating that he did not need to be seen.  (*Id.*)  However, when Plaintiff was seen by Defendant Gish, finally, "she was shocked at the sight of the wound and how much blood loss occurred."  (*Id.*)  Eventually, the surgeon evaluated the wound, questioned why Plaintiff was not seen sooner, and that Plaintiff needed surgery immediately.

Plaintiff additionally alleges he went under surgery for a circumcision on November 30, 2022.  During the aftercare treatment notes, Plaintiff was told that if he had any bleeding, if the stitches came undone, if there was swelling or excessive pain that he should seek medical attention as soon as possible.  On 12/10/2022, Plaintiff's stitches ripped off in the middle of the night which resulted in a lot of blood. Plaintiff told the person on duty and nurse Torres what had happened and that he needed to be seen per his doctor's instructions.  If the wound stayed open, there was a great risk for infection.  Plaintiff was brushed off and was told that he would be okay and they would not see him for evaluation because Plaintiff had a doctor's appointment set for that morning and to let the doctor know then.

The doctor saw Plaintiff around 9 am for an evaluation of the wound and the doctor saw the two holes where the stitches had ripped out.  The doctor saw how badly the wound was bleeding. Plaintiff said that he needed to be taken to the TTA.  However, the doctor disregarded this request and instead cleaned the wound and wrapped it.  The doctor said that he would not send Plaintiff to TTA because the wound would heal at some point.  Plaintiff explained what the surgeon had expressed in post operative instructions that if the stitches were to rip, but the doctor ignored Plaintiff's request and explanation despite begging the doctor for further help with TTA. Plaintiff was sent back to his cell to sit in blood and suffer in extreme pian.

That same night about 8:30 pm, Plaintiff started to change his wound dressings and noticed "blood clots, chunks of blood and ongoing bleeding to the wound."  (ECF No. 15 at 5.) Plaintiff called the third watch guard for help, stated he was bleeding badly and was in extreme

pain, and said he needed to go to TTA.  The third watch guard stated that TTA was called and informed of Plaintiff's requests but that nurse Gish was denying the request for Plaintiff to be seen as there was nothing that she could do for him.

Early the next day, Plaintiff told the correctional officer that he needed help and needed to go to TTA.  The ASU nurse and the correctional officer did their job and helped Plaintiff and took him to TTA.  The TTA nurse stated for a second time that Plaintiff did not need to be seen, which was a disregard for his health and safety.  Once Plaintiff was seen by the TTA nurse, she noticed how much blood and how badly the wound looked and agreed that Plaintiff needed to be sent to the hospital as soon as possible.

Plaintiff was transferred to the hospital "where the surgeon then evaluated the wound and asked the Plaintiff why he didn't ask for help and stated that he needed surgery stiches right away."  (ECF No. 15 at 5.)  Plaintiff explained that he asked for help on numerous occasions but was ignored and told no by the medical staff.  Plaintiff ended up with a total of six stitches to repair the wound.  Plaintiff was left to suffer in pain with the possibility of losing his penis due to infection.  All of it could have been prevented if staff had listened to Plaintiff and took him to be seen by the surgeon instead of dismissing him.

**C.  Parties' Positions**

Defendant Gish first argues that Plaintiff fails to state a claim for relief under ¶ 1983 because the amended complaint does not contain allegations that would establish Defendant Gish was acting under of color of state law.  Defendant Gish contends that private parties generally are not acting under state law and courts start with the presumption that private conduct does not constitute governmental action.  (ECF No. 33-1 at 4.)  Defendant Gish further contends that in the context of medical services provided to prisoners, a plaintiff must allege that the private physician or hospital he seeks to sue has contracted with the public prison system to provide treatment for inmates and has performed a public function sufficient to be found to have acted under color of law for purposes of § 1983.  (*Id.* at 4-5.)  Defendant Gish asserts that the amended complaint "does not contain even an allegation—let alone facts—that if assumed to be true would establish that Defendant Gish was acting under color of state law" and therefore the motion to dismiss

should be granted.  (*Id.* at 5.)

Defendant Gish next argues that the amended complaint's allegations do not allege any actual conduct by Defendant Gish.  Defendant Gish asserts that even assuming her alleged refusal to grant Plaintiff's request to go to TTA for help was negligent, constituted malpractice, and delayed his treatment, that conduct does not rise to the level of deliberate indifference, absent a showing that the chosen course of treatment was medically unacceptable and made in conscious disregard of an excessive risk to Plaintiff.  Defendant Gish contends that there are no allegations in the amended complaint establishing that she made any decision in conscious disregard of an excessive risk to Plaintiff and the motion to dismiss should be granted.

In his opposition, Plaintiff argues that while Defendant Gish asserts that he failed to allege in his pleading the words "worked for a service contracted by the state for custodial provisions," such absolute directness and rigid strictness do not apply to pro se pleadings.  (ECF No. 42 at 9.) Plaintiff contends that he alleged he was in the custody of a state prison, that the defendant was nurse, and that the defendant denied him medical treatment while acting under color of state law. Plaintiff argues that these allegations are sufficient to raise a reasonable inference that defendant was providing medical services on behalf of the prison, a function that constitutes state action. Plaintiff claims that to require more would be "hypertechnical."  (*Id.*.)

Plaintiff also argues that Defendant Gish was indifferent for not seeking to triage the patient after continuous requests for medical assistance.  (ECF No. 42 at 2.)  Plaintiff further contends that Defendant Gish "knew of and was aware of the facts that (1) an ongoing bleed was occurring, (2) the sensitive location of that bleed, (3) the previous denials of the psych tech – it is reasonably inferred that defendant Gish knew the failure to even assess the plaintiff was inappropriate."  (*Id.* at 8.)  Plaintiff further contends that he suffered from a "continuous bleed" and made repeated requests for medical assistance, all of which were denied.  (*Id.*)  He argues that "[r]ather than conduct her own triage as a registered nurse and instead rely solely on an unlicensed techs improper assessment, despite have both the authority and the training to triage, constitutes deliberate indifference."  (*Id.* at 8-9.)  Plaintiff asserts that Defendant Gish consciously disregarded Plaintiff, "making no effort to evaluate the wound or ensure that plaintiff was

receiving proper medical care." (*Id.* at 9.)

In reply to Plaintiff's argument that the allegations raise a reasonable inference that Defendant Gish was providing medical care on behalf of the prison, Defendant Gish contends that private parties contracting with a prison to provide medical care are not necessarily state actors and the amended complaint fails to allege facts establishing that Defendant Gish was acting under color of state law.

In reply to Plaintiff's argument that she knew of and was aware of the previous denials of the psych tech, Defendant Gish contends that the amended complaint does not allege that she was aware of the previous denials of the psych tech. Instead, Defendant Gish asserts that the amended complaint alleges simply that a third watch guard said that Defendant Gish denied Plaintiff's request to be seen at the TTA "as there was nothing that she could do for him." (ECF No. 45 at 3.) Defendant Gish asserts that there are no allegations in the amended complaint evidencing that the statement attributed to her was untrue. Defendant Gish further asserts that the amended complaint does not specify what was conveyed to her as to the "help" Plaintiff was requesting, and such specificity is necessary to comply with Rule 8 and for Defendant Gish and the Court to learn of the specific treatment Plaintiff was seeking from Defendant Gish. Defendant Gish additionally asserts that as a nurse, her treatment options are limited in some respects, and they may also have been further limited given the time of evening she allegedly received the request. (*Id.*)

### III.   <u>Discussion</u>

#### A.  **Color of State Law**

To state a claim under § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A showing that the defendant has acted under the color of state law is a prerequisite for any relief under section 1983. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (allegation of state action is "necessary element of a § 1983 claim"). A person acts under color of state law when he or she "exercise[s] power possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S at 49 (quotation and citation omitted).

Defendant Gish correctly notes that private parties generally do not act under color of state law for section 1983 purposes, *see Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991), and the law presumes that conduct by private actors is not state action, *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).  However, Plaintiff's amended complaint identifies Defendant Gish as a registered nurse employed at the Substance Abuse Treatment Facility.  (ECF No. 15 at 2.)  "[M]edical providers who are employed by the state . . . or are under contract to provide medical services to an inmate population are state actors.  *See Rios v. Ravi*, No. 1:19-cv-01009-KES-HBK, 2024 WL 3013674, at *7 (E.D. Cal. June 14, 2024), *report and recommendation adopted*, No. 1:19-cv-01009-KES-HBK (PC), 2025 WL 2639838 (E.D. Cal. Sept. 15, 2025).  Accepting the factual allegations as true, the amended complaint sufficiently alleges that Defendant Gish was a nurse employed by the state and thus a state actor.

**B.  Deliberate Indifference**

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm.  *Jett*, 439 F.3d at 1096.  In applying this

standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Defendant Gish asserts that Plaintiff fails to state a claim for deliberate indifference under the Eighth Amendment.  As to this argument, it is noted that the Court screened Plaintiff's first amended complaint pursuant to 28 U.S.C. § 1915A and determined that it states a claim against Defendants Torres and Gish for deliberate indifference to medical care in violation of the Eighth Amendment.  (ECF Nos. 17, 21.)  Although the existence of a screening order is not a complete bar to a subsequent Rule 12(b)(6) motion for failure to state a claim, the legal standard for screening and for 12(b)(6) motions is the same, 28 U.S.C. § 1915A; *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  With that standard and background in mind, the Court now addresses Defendant Gish's arguments.

Defendant Gish argues that "the amended complaint's allegations do not allege any actual conduct by Defendant Gish," (ECF No. 33-1 at 6), and that "the amended complaint contains no factual allegations of overt acts by Defendant Gish," (*id.* at 7).  However, a prisoner may state a

cognizable claim by alleging "acts *or omissions* sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106 (emphasis added).  Indeed, deliberate indifference may be shown where there is a "failure to respond to a prisoner's pain or possible medical need." *See also Jett,* 439 F.3d at 1096.  The crux of Plaintiff's Eighth Amendment claim against Defendant Gish is that she failed to act, delaying and denying Plaintiff's request for treatment.  (*See generally* ECF No. 15.)  Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).

Defendant Gish next contends that, even assuming Defendant Gish "denied Plaintiff's request for help because 'there was nothing that she could do' for Plaintiff, the amended complaint's allegations do not identify how that determination was medically unacceptable under the circumstances or that Defendant Gish's determination was made [in] disregard of an excessive risk to Plaintiff." (ECF No. 33-1 at 6.)  This argument is not persuasive.

Plaintiff alleges that after being seen by Ogbuehi, he was still bleeding and asked Defendant Gish to call medical about the bleeding and loss of blood.  (ECF No. 15 at 3.)  Plaintiff further alleges that Defendant Gish delayed and denied "Plaintiff's medical needs stating that he did not need to be seen." (*Id.*)  However, when he was finally seen by Defendant Gish "she was shocked at the sight of the wound and how much blood loss occurred [and] eventually the surgeon evaluated the wound and questioned why Plaintiff was not seen sooner and that Plaintiff needed surgery immediately." (*Id.*)  Drawing all reasonable inferences in Plaintiff's favor, as the Court must do, these allegations identify how Defendant Gish's determination to deny treatment was medically unacceptable under the circumstances or made in disregard of an excessive risk as Plaintiff allegedly needed to be seen sooner and needed immediate surgery.

Defendant Gish next argues that the allegations in the amended complaint establish that Defendant Gish's decision was consistent with the decision of the doctor who had treated Plaintiff that same day, and who refused Plaintiff's request to be taken to the TTA based on the medical opinion that the wound would heal at some point.  (ECF No. 33-1 at 7.)  This argument also is not persuasive given the alleged time that elapsed between the doctor's decision and Defendant

9

Gish's determination, along with the apparent worsening of Plaintiff's condition in the interim. According to the allegations, Plaintiff reportedly saw the doctor at 9:00 a.m. on December 10, 2022, and did not seek Defendant Gish's help until at about 8:50 p.m., nearly twelve hours later, after noticing "blood clots, chunks of blood and ongoing bleeding to the wound."  (ECF No. 15 at 4-5.)  To the extent Defendant Gish's argument suggests reliance on the doctor's opinion, there are not factual allegations in the amended complaint from which it can be inferred that Defendant Gish was aware of the doctor's decision denying Plaintiff's request to be taken to TTA because the wound would heal at some point.  For that reason, Defendant Gish's additional argument that the difference of opinion between the doctor and the surgeon who later said Plaintiff needed surgery/stiches is not determinative as to whether Defendant Gish was deliberately indifferent.

Finally, Defendant Gish argues that even assuming her alleged refusal to grant Plaintiff's request to go to TTA for help was negligent, constituted malpractice, and delayed his treatment, that conduct does not rise to the level of deliberate indifference absent a showing that the chosen course of treatment was medically unacceptable and made in conscious disregard of an excessive risk to Plaintiff.  (ECF No. 33-1 at 7-8.)  Plaintiff's allegations, liberally construed, go beyond negligence.  As discussed, Plaintiff plausibly alleges that Defendant Gish knew that Plaintiff was bleeding, suffering a loss of blood, and in pain, and denied his request to be seen. (ECF No. 15 at 3, 5.)  Plaintiff also plausibly alleges that he should have been seen sooner, required immediate surgery, and was left to suffer in pain.  (*Id.* at 5.)  Plaintiff's allegations therefore state a plausible Eighth Amendment claim for deliberate indifference against Defendant Gish.  *See Jett*, 439 F.3d 1096 (explaining that claim of deliberate indifference consists of two parts (1) a "serious medical need" demonstrated by a failure to treat a prisoner's condition that could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) "deliberate indifference" demonstrated by a defendant's purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference); *Wilhelm*, 680 F.3d at 1122 n.8 (unnecessary delay in treatment can amount to deliberate indifference where plaintiff forced to endure unnecessary pain).

///

## IV.    Conclusion and Recommendation

For the reasons stated, it is HEREBY RECOMMENDED that Defendant Gish's motion to dismiss, (ECF No. 33), be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **March 3, 2026**                    /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE

11