# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THADIUS J. HOLLAND,<br><br>                    Plaintiff,<br><br>    v.<br><br>TORRES, *et al.*,<br><br>                    Defendants. | Case No.  1:24-cv-00557-JLT-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT TORRES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>(ECF No. 36)<br><br>**FOURTEEN-DAY DEADLINE** |

## I.    Introduction

Plaintiff Thadius J. Holland ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On December 13, 2024, the undersigned screened Plaintiff's first amended complaint, found that Plaintiff stated cognizable claims against Defendants Guadalupe Torres and Candice Gish for deliberate indifference to medical care in violation of the Eighth Amendment, and issued findings and recommendations recommending the action proceed only on the claims against Defendants Torres and Gish.  (ECF No. 17.)  On February 14, 2025, the district judge adopted the findings and recommendations in full and ordered that this action proceed on Plaintiff's claim for deliberate indifference to medical care in violation of the Eighth Amendment against Defendants Torres and Gish, as stated in the first amended complaint.  (ECF No. 21.)

Currently before the Court is Defendant Torres' motion to dismiss the first amended

1

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed June 12, 2025. (ECF No. 36.) Plaintiff filed a response on August 29, 2025. (ECF No. 42.) Defendant Torres replied on September 26, 2025. (ECF No. 49.) The motion is fully briefed.

## II.    Motion to Dismiss for Failure to State a Claim

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006); *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000).

In general, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court has an obligation to construe such pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, a court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982). Also, the Court need not credit naked assertions, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555–57.

### B. Relevant Allegations in the Amended Complaint

In his first amended complaint, Plaintiff alleges that Defendant Torres, psych tech at the Substance Abuse Treatment Facility, refused to send Plaintiff to TTA for medical treatment, leaving Plaintiff "in a pool of blood until a next day appointment." (ECF No. 15 at 3.) Non-party

2

Clement Ogbuehi refused to send Plaintiff for medical treatment and wrapped Plaintiff's wounds after ripping the stiches trying to clean the wound. After continuing bleeding after being seen by Ogbuehi, Plaintiff was still bleeding and asked Defendant Gish to call medical about the bleeding and loss of blood. Defendant Gish was acting under color of law by delaying and denying Plaintiff's medical needs stating that he did not need to be seen. (*Id.*) However, when Plaintiff was seen by Defendant Gish, finally, "she was shocked at the sight of the wound and how much blood loss occurred." (*Id.*) Eventually, the surgeon evaluated the wound, questioned why Plaintiff was not seen sooner, and that Plaintiff needed surgery immediately.

Plaintiff additionally alleges he went under surgery for circumcision on November 30, 2022. During the aftercare treatment notes, Plaintiff was told that if he had any bleeding, if the stitches came undone, if there was swelling or excessive pain that he should seek medical attention as soon as possible. On 12/10/2022, Plaintiff's stitches ripped off in the middle of the night which resulted in a lot of blood. Plaintiff told the person on duty and nurse Torres what had happened and that he needed to be seen per his doctor's instructions. If the wound stayed open, there was a great risk for infection. Plaintiff was brushed off and was told that he would be okay and they would not see him for evaluation because Plaintiff had a doctor's appointment set for that morning and to let the doctor know then.

The doctor saw Plaintiff around 9 am for an evaluation of the wound and the doctor saw the two holes where the stitches had ripped out. The doctor saw how badly the wound was bleeding. Plaintiff said that he needed to be taken to the TTA. However, the doctor disregarded this request and instead cleaned the wound and wrapped it. The doctor said that he would not send Plaintiff to TTA because the wound would heal at some point. Plaintiff explained what the surgeon had expressed in post operative instructions that if the stitches were to rip, but the doctor ignored Plaintiff's request and explanation despite begging the doctor for further help with TTA. Plaintiff was sent back to his cell to sit in blood and suffer in extreme pian.

That same night about 8:30 pm, Plaintiff started to change his wound dressings and noticed "blood clots, chunks of blood and ongoing bleeding to the wound." (ECF No. 15 at 5.) Plaintiff called the third watch guard for help, stated he was bleeding badly and was in extreme

3

pain, and said he needed to go to TTA.  The third watch guard stated that TTA was called and informed of Plaintiff's requests but that nurse Gish was denying the request for Plaintiff to be seen as there was nothing that she could do for him.

Early the next day, Plaintiff told the correctional officer that he needed help and needed to go to TTA.  The ASU nurse and the correctional officer did their job and helped Plaintiff and took him to TTA.  The TTA nurse stated for a second time that Plaintiff did not need to be seen, which was a disregard for his health and safety.  Once Plaintiff was seen by the TTA nurse, she noticed how much blood and how badly the wound looked and agreed that Plaintiff needed to be sent to the hospital as soon as possible.

Plaintiff was transferred to the hospital "where the surgeon then evaluated the wound and asked the Plaintiff why he didn't ask for help and stated that he needed surgery stiches right away." (ECF No. 15 at 5.)  Plaintiff explained that he asked for help on numerous occasions but was ignored and told no by the medical staff.  Plaintiff ended up with a total of six stitches to repair the wound.  Plaintiff was left to suffer in pain with the possibility of losing his penis due to infection.  All of it could have been prevented if staff had listened to Plaintiff and took him to be seen by the surgeon instead of dismissing him.

### C. Defendant's Arguments

Defendant Torres argues that Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to his serious medical needs by merely alleging that she delayed medical care for a number of hours on December 10, 2022.  The amended complaint alleges that Defendant Torres denied Plaintiff further evaluation of his injury "in the middle of the night" because he already had a doctor's appointment in the morning.  (ECF No. 36 at 5.)  Although Plaintiff alleges that if the wound stayed open, there was a great risk for infection, the allegations do not show how any purported delay by Defendant Torres resulted in further harm.  (*Id.*)  Rather, the allegations show that in the morning, the doctor treated the wound by cleaning and bandaging it, stating the wound would heal at some point.  Defendant Torres contends that her alleged delay in providing medical care "did not further any injury to Plaintiff's wound and Plaintiff fails to show how that determination was medically unacceptable under the circumstances or that

4

Defendant Torres' act was made in disregard of an excessive risk to Plaintiff." (*Id.* at 5-6.)

Defendant Torres additionally argues that she is entitled to qualified immunity because a reasonable official under the circumstances would not have believed their actions were unlawful. The amended complaint alleges that Plaintiff told Defendant Torres that his stitches ripped and that his wound was bleeding, but Defendant Torres determined that the seriousness of the bleeding was such that it could wait for Plaintiff's doctor's appointment already scheduled in the morning. Based on her assessment of the situation alleged, it would not have been clear to a reasonable psych tech that she was acting unlawfully. (ECF No. 36 at 7.)

### D. Plaintiff's Arguments in Opposition

In his opposition, Plaintiff argues that he stated a claim and made proper allegations, Defendant Torres is not able to claim qualified immunity as a contract medical worker providing services in a custodial environment, and Defendant Torres was, according to counsel, "committing a public offense by assessing and providing unlicensed medical care, and in a manner that was objectively inappropriate – and without ever laying eyes on the wound or patient." (ECF No. 42 at 2.)

Plaintiff asserts that Defendant Torres was not qualified to independently determine necessity of care. The role of psych tech is purely supportive and does not encompass the independent assessment of physical injuries, including open wounds. To that end, Plaintiff relies on the California Business & Professions Code to assert that while techs may provide a form of care under supervision, that care is limited to technical and manual skills. Plaintiff also relies on the California Code of Regulations to assert that techs are not trained, licensed, or legally permitted to make independent medical determinations, but registered nurses are trained to evaluate the severity of injuries. (ECF No. 42 at 4-5.)

Plaintiff argues that Defendant Torres committed "inexcusable neglect, knowingly and wilfully [sic] issuing an independent determination, denying [his] constitutional rights to assessment, review and the prompt attention to a blatantly obvious medical emergency . . . and without ever once laying eyes on the wound, bleed, or injury so sustained." (ECF No. 42 at 5.) Plaintiff claims that Defendant Torres did this, knowing that her license to practice did not cover

such triage and that she did not carry the requisite training.

Plaintiff next argues that Defendant Torres cannot claim qualified immunity. Plaintiff claims Defendant Torres was not licensed to assess the severity of the wound, and ignored the plea for help, leaving Plaintiff in a pool of blood, unable to properly care for a bleeding wound. Plaintiff also claims Defendant Torres "made an inappropriate determination of the seriousness of the matter, and without ever once laying eyes on the person or wound." (ECF No. 42 at 6.)

Plaintiff alleges that Defendant Torres was committing a public offense in violation of the California Business & Professions Code, which prohibits unlicensed practice and prevents unlicensed persons from interfering with, or influencing, a physician's professional judgment. Plaintiff claims Defendant Torres prevented medical attention in its entirety. Plaintiff contends that Defendant Torres's actions in violation of multiple statutes precludes the finding of qualified immunity.

### E. Defendant's Reply

Defendant Torres argues that Plaintiff's opposition fails to refute the fact that his operative complaint lacks sufficient allegations to state a claim of deliberate medical indifference under the Eighth Amendment. Plaintiff improperly attempts to bolster his allegations and overcome the assertion of qualified immunity by alleging conjectural violations of the California Business & Professions Code and California Code of Regulations that were not contemplated by the amended complaint. Plaintiff exceeds the scope of the factual allegations in his arguments.

Defendant Torres also argues that Plaintiff's opposition fails to address the lack of sufficient facts alleged in the amended complaint to establish further injury from the alleged delay of medical treatment. Defendant Torres' alleged conduct did not lead to further harm, and the amended complaint should be dismissed without leave to amend.

Defendant Torres reasserts that she is entitled to qualified immunity because, according to her assessment of the situation as alleged in the amended complaint, it would not have been clear to a reasonable psych tech that she was acting unlawfully. Plaintiff fails to refute this argument in his opposition and does not cite any case law to show, under the facts alleged, that Defendant Torres' actions or omissions violated clearly established law.

### III.   Discussion

#### A.  Deliberate Indifference

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.  In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must

show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Defendant Torres argues that Plaintiff fails to state a cognizable deliberate indifference claim because her alleged delay in providing medical care did not cause further injury. She also argues that Plaintiff fails to show how her determination was medically unacceptable under the circumstances or that her act was made in disregard of an excessive risk to Plaintiff.

Plaintiff has pled facts to demonstrate Defendant Torres failed to act in response to his medical need. According to the allegations in the amended complaint, Defendant Torres knew Plaintiff's stitches had ripped out, he was bleeding, and his doctor had instructed him to seek treatment because of risk of infection. Defendant Torres also knew that Plaintiff needed to be seen by doctor, acknowledging that Plaintiff had a doctor's appointment the next day and instructing him to let the doctor know what happened. (ECF No. 15 at 5.) Defendant Torres' denial left him "in a pool of blood until a next day appointment," (*Id.* at 3.), and the delays in his treatment caused him to suffer pain. (*Id.* at 5.) He ultimately needed surgery to repair the wound. (*Id.*) Liberally construing the allegations and drawing all reasonable inferences in favor of Plaintiff, which the Court must do, the amended complaint states a claim for deliberate indifference to serious medical needs against Defendant Torres. *See Jett*, 439 F.3d 1096 (explaining that claim of deliberate indifference consists of two parts (1) a "serious medical need" demonstrated by a failure to treat a prisoner's condition that could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) "deliberate indifference" demonstrated by a defendant's purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference); *Wilhelm*, 680 F.3d at 1122 n.8 (unnecessary delay in treatment can amount to deliberate indifference where plaintiff forced to endure unnecessary pain).

### B. Qualified Immunity

Defendant Torres argues that she is entitled to qualified immunity.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

A right is "clearly established" when its bounds are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Indeed, "in an obvious case, [highly generalized] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

The Ninth Circuit has found that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). A motion to dismiss based on qualified immunity requires the court "to decide these weighty questions aided only by the skeletal—at best—factual picture sketched out in the complaint." *Wong v. United States*, 373 F.3d 952, 956 (9th Cir. 2004), *overruled in part on other grounds*, *Wilkie v. Robbins*, 551 U.S 537 (2007). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quotations omitted); *see also Keates*, 883 F.3d at 1235 ("[O]ur decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with

facts providing context for the challenged actions." (citation omitted)).

Qualified immunity is a fact-intensive determination. *See Saucier*, 533 U.S. at 201. The cornerstone of the qualified immunity analysis is the reasonableness of the official's conduct. *See Rosenbaum v. Washoe County*, 663 F.3d 1071, 1075–76 (9th Cir. 2011) ("The linchpin of qualified immunity is the reasonableness of the official's conduct."); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." (internal quotation marks and citations omitted)).

As discussed, the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that Defendant's conduct raises factual issues regarding violating a constitutional right. Taking the Plaintiff's allegations as true at the pleading stage, a reasonable official could infer that denying Plaintiff's request for medical treatment, given the fact that his stitches had ripped out, he was bleeding, and he needed to be seen per his doctor's instructions as there was great risk for infection, would subject him to a substantial risk of harm. Given the factual inquiry necessary for qualified immunity, the Court cannot determine the issue at this time. *Brown v. Grove*, 647 F. Supp. 2d 1178, 1183 (C.D. Cal. 2009) ("fact-intensive issues pertinent to a qualified immunity defense, particularly whether the defendant's conduct was reasonable, are better left to summary judgment") (citation omitted).

## IV.   Conclusion and Recommendation

For the reasons stated, it is HEREBY RECOMMENDED that Defendant Torres' motion to dismiss, (ECF No. 36), be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page**

**number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **March 4, 2026**                    /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE

11